UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY R. OBENDORF,<br><br>Defendant. | Case No. 1:15-cr-00254-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it the Government's Motion to Disqualify. (Dkt. 22.) For the reasons below, the Court will deny the motion.

## BACKGROUND

George Breitsameter, counsel for Defendant Gregory Obendorf, formerly worked for the United States Attorney's Office (USAO) as an Assistant United States Attorney (AUSA). *Nafzger Aff.* ¶¶ 3-6, Dkt. 22. He retired on April 11, 2014. *Id.* ¶ 3. In November 2013, the USAO began investigating Obendorf's alleged criminal conduct. *Kabasa Aff.* ¶

2, Dkt. 22. The investigation was initially assigned to Breitsameter. *Breitsameter Aff.* ¶ 17, Dkt. 26-1. Breitsameter, however, had already notified the USAO of his intent to retire and was instructed to devote his work hours to another case in litigation. *Id.* ¶ 19.

Accordingly, Breitsameter's involvement in the Obendorf matter while at the USAO consisted of only two conversations. The first conversation, with Special Agent Scott Kabasa, occurred on December 6, 2013. *Kabasa Aff.* ¶ 2, Dkt. 22. Kabasa informed Breitsameter it was necessary to recover a "trail camera" Kabasa had placed on Obendorf's property, which Obendorf had discovered and turned over to his attorney, David Leroy. *Breitsameter Aff.* ¶ 21, Dkt. 26-1; *Kabasa Aff.* ¶ 5, Dkt. 22. Breitsameter instructed Kabasa on the proper procedure for obtaining a search warrant to recover the camera from Leroy. *Kabasa Aff.* ¶ 5, Dkt. 22. Kabasa did not pursue the matter with Breitsameter any further. *Id.* Breitsameter is confident he made no decision in that meeting "that impacted the course of the investigation." *Breitsameter Aff.* ¶ 23, Dkt. 26-1. Three days after that meeting, the Obendorf investigation was re-assigned to AUSA Christian Nafzger. *Id.* ¶ 22.

The second conversation occurred in or around April 2014 with AUSA Nafzger. *Nafzger Aff.* ¶ 3, Dkt. 22. Nafzger claims he asked Breitsameter for advice on "what type of penalty [the Government] should seek in the prosecution of Gregory Obendorf." *Id.* Nafzger further claims he discussed the "strengths and weaknesses of the case." *Id.* Breitsameter, in contrast, contends the discussion "did not focus on the merits or factual circumstances of the Obendorf investigation." *Breitsameter Aff.* ¶ 24, Dkt. 26-1. Instead,

Breitsameter claims that since Nafzger had little experience with wildlife cases, Breitsameter gave him a "general overview concerning sentencing disposition of wildlife cases." *Id.*

Breitsameter retired from the USAO on April 11, 2014 and went into private practice. *Nafzger Aff.* ¶ 3, Dkt. 22. Roughly 18 months later, on November 10, 2015, Obendorf was indicted. *Id.* ¶ 4. Breitsameter contacted Nafzger on November 24, 2015 and explained that he and his firm represented Obendorf. *Id.* ¶ 5. Throughout the next five months, Breitsameter continued having regular contact with Nafzger while representing Obendorf. *Id.* ¶¶ 5-14. Breitsameter also appeared on Obendorf's behalf at his arraignment hearing on March 1, 2016. *Id.* ¶ 11.

Initially, Nafzger did not object to Breitsameter's representation. *Nafzger Aff.* ¶ 5-11, Dkt. 22. In fact, Breitsameter claims Nafzger advised him the USAO "did <u>not</u> believe that [he] had a conflict of interest." *Breitsameter Aff.* ¶ 5, Dkt. 26-1. Nevertheless, on April 1, 2016, the Government requested Breitsameter withdraw from the case, alleging he had a conflict of interest. *Id.* ¶ 14. Breitsameter refused, and this motion followed.

## LEGAL STANDARD

The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers. *See United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996). Disqualification is a drastic measure, and the Court must consider the danger of a motion to disqualify opposing counsel as a litigation tactic. *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986).

Given the potential for abuse, disqualification motions should be subjected to "particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985).

## DISCUSSION

1.   **Disqualification under the Ethics in Government Act**

   A.   **18 U.S.C. § 207(a)(1)**

   The Government seeks to disqualify Breitsameter under 18 U.S.C. § 207(a)(1), which provides:

> Any person who is an officer or employee of the executive branch of the United States, and who, after the termination of his or her service or employment, knowingly makes, with the intent to influence, any communication to or appearance before any court, on behalf of any other person in connection with a particular matter—(A) in which the United States or the District of Columbia is a party or has a direct and substantial interest, (B) in which the person participated personally and substantially as such officer or employee, and (C) which involved a specific party or specific parties at the time of such participation, shall be punished as provided in section 216 of this title.

18 U.S.C. § 207(a)(1). The Government contends disqualification is proper because Breitsameter's participation in the Obendorf matter was "substantial" while at the USAO. Substantial participation "means that the employee's involvement was of significance to the matter." 5 C.F.R. § 2641.201(i)(3). Therefore, it "requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or peripheral issue. A finding of substantiality should be based not only on the effort devoted to a matter, but also on the importance of the effort." *Id.*

The Court finds Breitsameter did not substantially participate in the Obendorf matter while at the USAO. As noted, Breitsameter had only two brief conversations about the Obendorf matter while at the USAO. The December 6, 2013 conversation was limited to discussing a camera Kabasa wanted to recover, and Breitsameter merely advised him on the proper procedure for obtaining a search warrant. *Kabasa Aff.* ¶ 5, Dkt. 22.

And Breitsameter contends the conversation that occurred in or around April 2014 with Nafzger was a five-to-ten minute discussion that "did not focus on the merits or factual circumstances of the Obendorf investigation." *Breitsameter Aff.* ¶ 24, Dkt. 26-1. Instead, Breitsameter gave Nafzger a "general overview concerning sentencing disposition of wildlife cases." *Id.* Though the Government disputes Breitsameter's recollection of that meeting, even under the Government's version of the conversation it was insignificant. The fact that the Government initially believed there was no conflict with Breitsameter representing Obendorf suggests the Government was not concerned that it had revealed its theory of the case or anything of significance to Breitsameter.[1] Instead, the Government later became concerned about the appearance of misconduct once it formally researched the applicable rules and statutes. Although such an appearance is a real concern, it does not suggest the conversation between Nafzger and

---

[1] That Naftzger initially concluded there was no conflict also suggests that AUSA Naftzger believed Breitsameter's participation in the case was not "substantial." The Court's decision today confirms that Naftzger was correct in his initial assessment.

**MEMORANDUM DECISION AND ORDER - 5**

Breitsameter was significant. Plus, it remains undisputed that the conversation occurred roughly 2 years ago, and each attorney's memory is likely imperfect – lending even more support to just how insignificant the conversation was. Thus, based on these two limited conversations, the Court cannot conclude Breitsameter's "involvement was of significance to the matter." 5 C.F.R. § 2641.201(i)(3). Therefore, disqualification is improper under § 207(a)(1).

### B.     18 U.S.C. § 207(a)(2)

The Government also seeks to disqualify Breitsameter under 18 U.S.C. § 207(a)(2), which provides:

> Any person subject to the restrictions contained in [18 U.S.C. § 207(a)(1)] who, within 2 years after the termination of his or her service or employment with the United States or the District of Columbia, knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States or the District of Columbia, on behalf of any other person (except the United States or the District of Columbia), in connection with a particular matter—(A) in which the United States or the District of Columbia is a party or has a direct and substantial interest, (B) which such person knows or reasonably should know was actually pending under his or her official responsibility as such officer or employee within a period of 1 year before the termination of his or her service or employment with the United States or the District of Columbia, and (C) which involved a specific party or specific parties at the time it was so pending, shall be punished as provided in section 216 of this title.

18 U.S.C. § 207(a)(2).

The Court finds disqualification improper under § 207(a)(2) for two reasons. First, as of April 11, 2016, Breitsameter is no longer subject to the two-year limitation set forth under § 207(a)(2). The Government points to no authority suggesting Breitsameter is now

precluded from representing Obendorf simply because he may once have been so precluded. Second, Breitsameter informed the Government he planned to represent Obendorf on November 24, 2015, and the Government did not object. *Nafzger Aff.* ¶ 5, Dkt. 22. Thereafter, Breitsameter had several conversations with Nafzger about the case, again without any objection from the U.S. Attorney's Office. *Id.* ¶¶ 8-10. Breitsameter even appeared on Obendorf's behalf at his arraignment hearing on March 1, 2016. *Id.* ¶ 11. Yet the Government waited until April 1, 2016, shortly before trial and just 10 days before Section 207(a)(2)'s 2-year limitation would end, to finally object. *Id.* ¶ 15.

While the Court acknowledges Breitsameter's representation of Obendorf may once have implicated § 207(a)(2)'s two-year limitation, disqualification is not the proper way to enforce § 207(a)(2) in this case. The Court's conclusion finds support in *United States v. Miller*, 624 F.2d 1198 (3d Cir. 1980), a case cited by the Government. *Miller* instructs the Court to "disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Id.* at 1201. This determination requires the Court to "consider the ends that the disciplinary rule is designed to serve and any countervailing policies . . . ." *Id.* Here, the Ethics in Government Act is designed to prohibit acts "which involve, or may appear to involve, the unfair use of prior Government employment." 5 C.F.R. § 2641.101. Put another way, the Ethics in Government Act seeks to "eliminate the perception that a 'revolving door' exists between the private bar and government service." *United States v. Martin*, 39 F. Supp. 2d 1333, 1335 (D. Utah 1999) (citation and quotation marks

**MEMORANDUM DECISION AND ORDER - 7**

omitted). As to the countervailing policies at stake, disqualifying Breitsameter at this late stage would raise a significant risk of (1) prejudicing Obendorf; (2) reducing Breitsameter's trial preparation to a complete waste of resources; (3) undermining Obendorf's Sixth Amendment right to counsel of his choice; and (4) threatening Obendorf's and the public's right to a speedy trial.

Weighing these concerns, the Court finds disqualification is not the proper way to enforce § 207(a)(2) in this case. The Government could have sought disqualification much earlier and limited at least some of the countervailing policies at stake. And despite not objecting and, in fact, expressly consenting to Breitsameter's initial representation, the Government remains free to try to enforce § 207(a)(2)'s underlying purposes by other means. Plus, as suggested above, the Government's initial position that there was no conflict with Breitsameter representing Obendorf indicates the Government was not concerned it revealed anything of significance to Breitsameter – meaning Obendorf has not received some unfair advantage by retaining Breitsameter. Accordingly, disqualification is improper under § 207(a)(2) in this case.

2.  **Disqualification under the Idaho Rules of Professional Conduct**

    A.  **Rule 1.9**

The Government also moves to disqualify Breitsameter under Idaho R. Prof'l Cond. 1.9(a)-(b). Although the substance of Rule 1.9(a) and (b) vary, the "underlying question" both Rules present "is whether the lawyer was so involved in the matter that

the subsequent representation can be justly regarded as a changing of sides in the matter in question." Idaho R. Prof'l Cond. 1.9 cmt. 2.

Here, Breitsameter's was not "so involved" with the Obendorf matter while at the USAO to now preclude his representation. Breitsameter had only two conversations about the Obendorf matter at the USAO and was not actively involved in investigating or litigating the case. Indeed, from when he was assigned the Obendorf investigation in November 2013 until his departure in April 2014, Breitsameter devoted all of his working hours to another case in active litigation. *Breitsameter Aff.* ¶ 19, Dkt. 26-1. In fact, Breitsameter was instructed not to work on any matter that would soon be assigned to another AUSA, which included the Obendorf matter. *Id.* Because Breitsameter was not "so involved" with the Obendorf matter while at the USAO to now preclude his representation, disqualification is improper under Rules 1.9(a) and (b).

B.   **Rule 1.11**

Finally, the Government seeks to disqualify Breitsameter under Idaho R. Prof'l Cond. 1.11(a)(3), which provides:

> [A] lawyer who has formerly served as a public officer or employee of the government: . . . shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.

Idaho R. Prof'l Cond. 1.11(a)(3). Since the Court has concluded that Breitsameter's participation in the Obendorf matter while employed at the USAO was not substantial, disqualification is improper under Rule 1.11(a)(3).

**ORDER**

The Government's Motion to Disqualify (Dkt. 22) is **DENIED.**

DATED: April 20, 2016

B. Lynn Winmill
Chief Judge
United States District Court